UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

    Plaintiff,

v.                                          1:14-cr-2021 JAP

**DUANE DAY**,

    Defendant.

### MEMORANDUM OPINION AND ORDER

On January 14, 2015, the United States filed UNITED STATES' MOTION IN LIMINE TO ADMIT EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b) (Doc. No. 29) (Motion). On January 28, 2015, Defendant filed DEFENDANT'S RESPONSE TO THE UNITED STATES' MOTION IN LIMINE TO ADMIT EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b) (Doc. No. 32) (Response). For the following reasons, the Court will grant in part and deny in part the Motion.

    **I.**     **Background**

On May 22, 2014, Defendant was charged in a Complaint (Doc. No. 1) with violations of 18 U.S.C. §§ 1113 (attempted voluntary manslaughter), 113(a)(8) (assault of a spouse, intimate partner, or dating partner by strangling, suffocating, or attempted strangling or suffocation), and N.M. STAT. ANN. § 30-6-1 (abuse of a child, incorporated into federal law by way of 18 U.S.C. § 1153(b) (state law offenses committed in Indian country)).

The Complaint alleges that on May 12, 2014, Defendant suffocated his girlfriend. Complaint ¶ 3. He then "fled the scene with the victim's eleven month old and two-year old children…[and] hiked up a nearby mesa with a child under each arm." *Id.* Defendant's girlfriend

regained consciousness and followed Defendant up the mesa. *Id.* Police found the couple and the children on the mesa. *Id.* The children were "physically shaking from the cold." *Id.* Defendant was arrested on probation violations, and his blood alcohol content tested at .05. *Id.* Defendant's girlfriend was taken to the hospital to be treated for the injuries allegedly caused by the earlier suffocation. *Id.*

Defendant's girlfriend initially explained her injuries, which included a face red with "extreme petechiae,"[1] as being caused by steam at her workplace. *Id.* ¶ 4. But she then told emergency providers that her boyfriend had assaulted her by pulling her hair back and forth and slamming her against the wall. *Id.* She said she felt "pressure being applied to her face, and [Defendant's] hand was over her nose and mouth." *Id.*

A day later, FBI agents and the Laguna Pueblo police department interviewed Defendant's girlfriend. *Id.* ¶ 5. She said that she had fabricated the story that her injuries were caused by steam at her workplace. She gave more details about the alleged strangulation: Defendant "had one hand over her mouth and one hand around her neck, and that she was 'in and out' of consciousness." *Id.*

Defendant was interviewed the same day. He conceded that he and his girlfriend had argued on the night of her injuries and his arrest. *Id.* ¶ 6. Defendant said that he and his girlfriend "ended up on the floor, and he put his knee and body weight on her neck 'to calm her down.'" *Id.* Defendant denied strangling his girlfriend with his hands. *Id.*

The United States seeks to introduce at trial testimony concerning a July 19, 2009 incident in which Defendant had a similar altercation with a previous girlfriend. Apparently, police were called to Defendant's residence after receiving reports of a domestic disturbance.

---

[1] Petechiae are "minute hemorrhages or purpuric spots that appear on the skin or mucous…." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1689 (1966).

Motion at 2.² Defendant's girlfriend told the police officers that Defendant "was on top of her strangling her with both hands, and that she had abrasions on her neck from his fingernails." *Id.* The girlfriend stated that Defendant assaulted her after she told him she wanted to move out of his house. *Id.* at 2–3.

The United States also seeks to introduce testimony that one month before the crimes in the Complaint, "Defendant and [his girlfriend] engaged in an argument that resulted in the Defendant getting physical with [his girlfriend] while she was attempting to leave." *Id.* at 3. Specifically, the United States seeks to introduce evidence that on April 14, 2014, Defendant "plac[ed] his arms around [his girlfriend's] torso and [tore] her shirt."

The United States argues that this evidence is admissible in order to refute Defendant's statement to police officers that he was only trying to calm his girlfriend down, and did not intend to hurt her. *Id.* at 4. Defendant responds that this evidence must be excluded because its only use is impermissibly proving Defendant's propensity to commit the crime charged. Response at 1. Alternatively, Defendant argues that even if the evidence is relevant, its relevance is outweighed by the unfair prejudice it would cause. *Id.*

## II.     Standard of Review

"Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401(a)–(b). "Relevant evidence is admissible unless" the United States Constitution, a federal statute, the Federal Rules of Evidence, or other rules from the United States Supreme Court provide otherwise. Fed. R. Evid. 402. A court "may exclude relevant evidence if its probative value is outweighed by a danger of…unfair prejudice…." Fed. R. Evid. 403.

---

² The United States has attached no evidence in support of its Motion in Limine, so the Court assumes the United States has accurately characterized the evidence it seeks to introduce at trial.

3

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But such evidence may be admitted in order to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

### III. Discussion

The admission of evidence subject to Rule 404(b) is proper when the following criteria are met: (1) the evidence is "offered for a proper purpose[;]" (2) the evidence is relevant; (3) under Fed. R. Evid. 403 the probative value of similar-acts evidence is not substantially outweighed by its potential for unfair prejudice; and (4) the Court gives the jury proper limiting instructions upon request. *United States v. Jefferson*, 925 F.2d 1242, 1258 (10th Cir. 1991).

#### A. Whether Defendant's prior acts are relevant and offered for a proper purpose

"The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686 (1988). "In order to aid the district court's determination of whether evidence is offered to prove an issue other than character, the government must precisely articulate the purpose of the proffered evidence." *United States v. Birch*, 39 F.3d 1089, 1093 (10th Cir. 1994). The United States seeks to admit evidence of Defendant's prior acts in order to prove intent, absence of mistake, or motive. The Court will address each incident in turn.

       i.     *The alleged July, 2009 assault may be offered to show intent or absence of mistake, but not motive.*

The United States argues evidence that Defendant strangled his ex girlfriend makes it "more probable that he purposely assaulted the victim in this case by strangling her, versus injuring her by accident." Motion at 4. Defendant responds that the prior acts do not tend to establish any element of the offenses charged, and therefore cannot be offered under Rule 404(b). *See* Response at 4–5.

Defendant argues that in order to be convicted under 18 U.S.C. § 113(a)(8), the government does not need to offer any evidence of intent. Therefore, Defendant contends, none of the prior assaults are relevant to an element of the charged offenses. Defendant's argument rests on 18 U.S.C. § 113(b)(4)–(5), which defines "strangling" and "suffocating" without regard to "whether that conduct results in any visible injury or whether there is any intent to kill or protractedly injure the victim."

But even if Defendant may be convicted under 18 U.S.C. § 113(a)(8) without any proof that he intended to injure the victim, the United States still bears the burden of showing that Defendant "intentionally, knowingly, or recklessly impeded the normal breathing or circulation of the blood of a person by applying pressure to the throat or neck" in the case of strangling, and "intentionally, knowingly, or recklessly impeding the normal breathing of a person by covering the mouth of the person, the nose of the person, or both" in the case of suffocation. 18 U.S.C. § 113(b)(4)–(5). Therefore, evidence of the July, 2009 strangulation is relevant because it tends to make it more likely that Defendant intended to strangle or suffocate the victim in this case.

The United States proffers a second purpose for introducing the July, 2009 assault: as evidence of motive. The United States alleges that Defendant assaulted the victim in this case

after she told him she wanted to move out of the house. The United States argues that this evidence may be offered to prove motive because Defendant also committed the July, 2009 assault after his ex-girlfriend told him she wanted to move out. Defendant responds that the alleged victim has not said that the assault occurred after she told Defendant she wanted to leave, but as a reaction to her striking the Defendant. Response at 5.

Although the incident can be properly offered to undermine Defendant's statement that he did not intend to suffocate the alleged victim in this case, this goes to intent or absence of mistake. It is possible to characterize the incident as evidence of motive, but the fact that the incident involved a different victim means that any use of the incident to prove motive would be no different than improperly using the incident to prove Defendant has a propensity for violence. In sum, the July, 2009 incident may be offered to prove intent or absence of mistake, but not motive.

    ii.    *The alleged April, 2014 assault may be offered for the proper purpose of proving motive.*

The United States argues that the April, 2014 assault of the victim in this case is properly offered to show intent, motive, and absence of mistake. Defendant does not offer any specific argument as to why this prior act is any different from the other one. Instead, Defendant repeats his contention that the United States' proffered evidence can be offered for no other purpose than proving a propensity for violence. *See* Response at 5.

The United States says the April, 2014 episode may be offered to show an absence of mistake. But it does not offer any support for this conclusion. Nor can the Court perceive any: in the April, 2014 episode, Defendant allegedly grabbed the alleged victim as she tried to leave the

house, ripping her shirt. The Court cannot discern how this incident could be offered to show that Defendant did not mistakenly suffocate the victim a month later.

The United States next argues that the April, 2014 incident may be offered to show intent. But once again, the United States offers no reasoning in support of this conclusion. Even without hearing witness testimony or reviewing any other evidence of the incident, the Court is unable to discern a way the incident could be offered to show that Defendant intended to strangle or suffocate the victim a month later.

Finally, the United States argues that the previous incident can be offered to show motive. The United States argues that if Defendant grabbed the victim and ripped her shirt because she attempted to leave the house, then this evidence could be offered to furnish a motive for the alleged strangulation/suffocation a month later. Defendant responds that the evidence is irrelevant to showing motive because the victim supposedly stated "the assault allegedly occurred after she struck the Defendant and he was angry with her, not because she threatened to leave." Response at 5.

The Court concludes that the April, 2014 assault may be properly offered for the purpose of proving Defendant's motive. While the victim may have stated that Defendant was provoked into the alleged assault by her own assault, the United States is free to impeach that statement with the previous assault. Moreover, the previous assault gives context to the relationship that would help the jury understand why the May, 2014 assault took place.

## B. Whether Defendant's prior acts' probative value outweighs the potential for unfair prejudice, and whether any prejudice can be mitigated with limiting instructions

Having concluded that both of the previous incidents may be offered for a proper purpose, the Court now addresses whether the previous incidents' probative value is substantially outweighed by the risk of unfair prejudice to the Defendant. If it is, then the evidence should be excluded. Fed. R. Evid. 403.

The United States concedes that the evidence it seeks to introduce is prejudicial. It argues that it should be admitted in any case in order to contradict the Defendant's defense that "he was trying to settle the victim down, and did not intend to hurt her." Motion at 4. Defendant argues that the probative value of the two incidents are minimal, and that the prejudicial effect is large because introducing the evidence will invite the jury to conclude that Defendant had a violent propensity and that this propensity makes it likely that he committed the crimes he is charged with in the Complaint.

### i. *The alleged July, 2009 incident*

The Court notes at the outset that evidence is relevant if it has "*any* tendency to make a fact [of consequence] more or less probable than it would be without the evidence…." Fed. R. Evid. 401 (emphasis added). The United States has met this minimal burden with respect to the July, 2009 assault by demonstrating how the evidence could show that Defendant intended to commit the assault or that he did not mistakenly choke the alleged victim.

The United States further claims that even though the July, 2009 assault is separated from the alleged assault in this case by almost five years, the evidence should nonetheless be admitted because the 2009 offense is quite similar to the charged offense. Motion at 5. The United States

cites *United States v. Cuch*, 842 F.2d 1173 (10th Cir. 1988), *United States v. Burse*, 150 F.App'x. 829 (10th Cir. 2005) (unpublished) and *United States v. Gaddy*, 532 F.3d 783, 789 (8th Cir. 2008) for this proposition.

In *Cuch*, the court held that the trial court properly admitted evidence of an assault from about eight years prior under Rule 404(b) in order to prove intent. The court noted both the charged and the prior assaults "involved assaults on women in Indian Country in the district of Utah in which the defendant threatened the victim with a rifle, forced the victim to his waiting truck, which had been left with the engine running, and shoved the victim into the car from the driver's side." *Cuch*, 842 F.2d at 1177.

In *Burse*, the court upheld the admission of prior drug convictions in order to prove the intent to distribute cocaine. *Burse*, 150 F.App'x at 831. The court noted that the prior conviction arose from drug trafficking involving the defendant's brother at the defendant's house, and that the defendant had been accused of engaging in drug trafficking at the same location and in the same manner. *Id.* The court noted—and the United States emphasizes here—that proximity in time is not the exclusive criterion for admitting evidence under Rule 404(b). Relevance—particularly with respect to a pattern of conduct or method—can often be dispositive. *Id.*

*Gaddy* also involved a trial on drug trafficking offenses in which the defendant denied all of the elements of the charges against him at trial. *Gaddy*, 532 F.3d at 789. The court held that the trial court did not err in admitting the defendant's prior drug convictions as Rule 404(b) evidence because the defendant's general denial had put intent at issue. *Id.*

The United States' argues the alleged July, 2009 assault is highly probative because it undermines the Defendant's statement that he never intended to suffocate the victim, only to calm her down after she struck him. The unstated premise to this conclusion is that by strangling

his ex-girlfriend in July, 2009, Defendant developed specialized education or knowledge of strangling that makes Defendant's explanation of the alleged May, 2014 assault as an innocent mistake highly unlikely. But there are crucial differences between the circumstances of alleged July, 2009 and May, 2014 assaults in this case. First, the victims are different. As the Court has already noted, this difference alone makes the incident irrelevant for proving motive. As to intent and absence of mistake, the Complaint in this case alleges Defendant "pulled [the victim's] hair back and forth, slammed her against the wall…and [put his] hand…over her nose and mouth." Complaint ¶ 4. The July, 2009 assault was much different: Defendant strangled his ex-girlfriend and left nail marks on her neck.

No matter, the United States argues. What differences there are—different victim, different method—are outweighed by the similarities: domestic strife as a provocation. But stripped of the differences, it is difficult to separate offering the evidence for the proper purpose of proving intent or absence of mistake from the improper purpose of proving propensity. It follows, then, that the probative value of the evidence of the July, 2009 incident would be substantially outweighed by its potential for unfair prejudice that could not be easily addressed with a limiting instruction.

None of this is to say that Defendant cannot open the door to evidence of the alleged July, 2009 assault. If Defendant elicits his prior statement from a law enforcement officer or offers testimony to the effect that his alleged suffocation in this case was a mere accident or the result of an innocent attempt to "calm down" the victim, the alleged July, 2009 assault's value as evidence of intent or absence of mistake will increase correspondingly.

In sum, while the jury could infer intent or absence of mistake from the July 2009 assault, it is likely that it will infer that Defendant has a character for violence, and that Defendant acted

in accordance with this character on the night of the alleged suffocation. Fed. R. Evid. 404(a)(1). For that reason, the Court will deny the United States' Motion as to the July, 2009 incident.

    *ii.*    *The alleged April, 2014 incident*

The Motion does not offer any arguments about why the April, 2014 incident is any different from the July, 2009 incident. Likewise, Defendant's Response groups the two incidents together, arguing that they are both equally prejudicial. But there are clear differences between the two events. The April, 2014 incident involved the alleged victim in this case. It also happened only a month before the alleged assault. These aspects make it possible to offer the incident as evidence of motive without automatically suggesting that it is evidence of a propensity. This means that the jury can be properly instructed about the permissible and impermissible inferences that can be drawn from the April, 2014 incident, which minimizes its prejudicial effect. Accordingly, the Court will grant the Motion as to the April, 2014 incident.

## CONCLUSION

The Court finds that the July, 2009 and April, 2014 assaults are relevant and may be offered for a proper purpose. But the Court finds that the prejudicial effect of the July, 2009 incident substantially outweighs its probative value, unless Defendant chooses to emphasize his statement that he never intended to or simply mistakenly suffocated the victim. The Court will deny the Motion as to the July, 2009 incident. The Court finds that the probative value of the April, 2014 incident is not outweighed by its prejudicial effect. The Court will therefore grant the Motion as to the April, 2014 incident. Defendant is instructed to submit a proposed limiting instruction by February 25, 2015.

IT IS ORDERED THAT THE UNITED STATES' MOTION IN LIMINE IS **GRANTED IN PART** AND **DENIED IN PART**.

<br>
_____<br>
SENIOR UNITED STATES DISTRICT JUDGE